THE STATE OF OHIO, APPELLANT, *v.* ROSE, APPELLEE.

[Cite as *State v. Rose* (1992), 63 Ohio St.3d 585.]

(Nos. 91–1458 and 91–1591—Submitted February
19, 1992—Decided May 6, 1992.)

586

*Donald W. White,* Prosecuting Attorney, and *David Henry Hoffmann,* for appellant.

*R. Daniel Dannon,* County Public Defender, and *Kendra L. Daugherty,* for appellee.

_____

HOLMES, J.  The issue certified to this court is whether a defendant can be convicted of R.C. 2913.03, unauthorized use of a motor vehicle, where the defendant's possession or use was initially authorized by the owner of the vehicle, but possession or use thereafter extended beyond the scope of the owner's consent.  For the reasons that follow, we answer such query in the affirmative.

R.C. 2913.03 provides:

"(A) No person shall knowingly use or operate an aircraft, motor vehicle, motorcycle, motorboat, or other motor-propelled vehicle without the consent of the owner or person authorized to give consent.

"(B) No person shall knowingly use or operate * * * [a] motor vehicle * * * without the consent of the owner or person authorized to give consent, and either remove it from this state, or keep possession of it for more than forty-eight hours.

"(C) The following are affirmative defenses to a charge under this section:

"(1) At the time of the alleged offense, the actor, though mistaken, reasonably believed that he was authorized to use or operate the property.

"(2) At the time of the alleged offense, the actor reasonably believed that the owner or person empowered to give consent would authorize the actor to use or operate the property.

"(D) Whoever violates this section is guilty of unauthorized use of a vehicle. Violation of division (A) of this section is a misdemeanor of the first degree. If the offender has previously been convicted of a violation of this section or of any other theft offense, violation of division (A) of this section is a felony of the fourth degree.  Violation of division (B) of this section is a felony of the fourth degree."

In *State v. Staley* (Mar. 24, 1983), Miami App. No. 82–CA–56, unreported, 1983 WL 4869, the Miami County Court of Appeals was presented with a somewhat analogous case to the one at bar.  In *Staley,* the defendant was given permission only to clean the victim's automobile; instead, the defendant took a one-hundred-mile unauthorized trip.  The *Staley* court reviewed R.C. 2913.03 and stated:

"The gravamen of the 'joyriding statute' is the unauthorized use of the vehicle by the party using it and the offender does not intend to permanently

deprive the owner of his property. \* \* \* Consenting to one type of use of an automobile would not be consent to another type of use." *Id.* at 5.

The Hamilton County Court of Appeals in *State v. Williams* (1943), 74 Ohio App. 370, 29 O.O. 518, 59 N.E.2d 58, syllabus, found in essence that:

"Where an automobile is entrusted to an employee for certain purposes, the use thereof by such employee for his own purposes not connected with any of the purposes for which the car was entrusted, constitutes a taking, driving or operating of a motor vehicle without the consent of the owner, within the purview of Section 12619, General Code." [3]

In *Williams*, the defendant was permitted to use his employer's automobile for the purpose of traveling to and from locations where his services were required by the employer. The defendant drove the automobile on an excursion of his own, and was apprehended the following day in the vehicle. *Id.* at 371, 29 O.O. at 518, 59 N.E.2d at 59. The *Williams* court held:

"When the defendant departed from the use of the car for which the consent and permission of his employer had been given, and thereafter proceeded to use the car for his own purposes entirely disassociated with any business of his employer, he most certainly drove and operated it without the consent of the owner.

" \* \* \*

"The original taking of the car may in one sense be considered lawful—even so, the driving and operating were unlawful and in violation of the statute, as such procedure was wholly without the consent of the owner. The provisions of the statute are in the disjunctive and severable. In another sense, however, when the defendant proceeded upon his misuse of the car, employing it for his own purposes, and for reasons entirely separate from the use originally permitted, this in itself constituted a taking as well as a driving and operation without the consent of the owner." *Id.* at 371–372, 29 O.O. at 518–519, 59 N.E.2d at 59.

In attempting to determine the legislative intent behind R.C. 2913.03, we note that the Committee Comment to House Bill No. 511 (which was the bill enacting R.C. 2913.03) provides:

"This section defines two degrees of the offense commonly known as 'joyriding.' For some years auto theft has been an increasing problem, and in this type of offense it is often difficult to prove that the offender intended to

---

3. G.C. 12619 provided in pertinent part:

" \* \* \* [W]hoever purposely takes, drives or operates any motor vehicle without the consent of the owner thereof \* \* \* shall be imprisoned \* \* \*." See former R.C. 4549.04, a predecessor to R.C. 2913.03.

permanently deprive the owner of the car. The offense of joyriding was designed to alleviate the enforcement problem this creates, and the gist of the offense is simply an unauthorized use of a vehicle. It is unnecessary to prove an intent to permanently deprive the owner. * * * "

We observe from a review of the Committee Comment to R.C. 2913.03, as well as the cases interpreting the statute, that the legislative intent in passing the statute was to hold individuals accountable for the unauthorized use of a motor vehicle where such specific use was without the owner's consent. Clearly, where an individual uses a motor vehicle beyond the scope of the owner's consent, he or she has violated R.C. 2913.03 because no consent has been given for the particular use. Furthermore, even though consent may be given for a specific purpose, the owner may revoke consent after notifying the borrower he or she is no longer entitled to use the vehicle. Thus, R.C. 2913.03 prohibits the use or operation of a motor vehicle without, beyond, or after revocation of the owner's consent.

In the case *sub judice* appellee had permission to use Nadeau and Hein's vehicle only to go to work and he was required to return it that evening. However, appellee kept the borrowed vehicle beyond the time limit imposed by Nadeau and Hein and contacted them two days later. On the third day after appellee borrowed the vehicle he left it with another individual who in turn contacted Nadeau and Hein. Clearly, the record supports not only the fact that appellee used the borrowed vehicle beyond the scope of consent given to him, but as the trial court found, he "maintain[ed] possession of the car after the consent had been expressly withdrawn by a person who was authorized to do that[.]"

The court of appeals in this case rejected the holdings in *Staley* and *Williams* and found that the conduct attributed to appellee fell under R.C. 2913.02(A)(2),[4] which designates the use of a motor vehicle beyond the scope of the owner's consent to be a theft offense. It appears that the court of appeals misconstrued the facts and law as applied in this case.

R.C. 2913.02(A) clearly requires that the accused intended to permanently *deprive* the owner of the property rather than merely use the property beyond the owner's consent. In the present case the record is devoid of any evidence, and the prosecution has failed to assert, that appellee intended to deprive

4. R.C. 2913.02(A) provides in pertinent part:

"No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
"* * *
"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent * * *."

Nadeau and Hein of their vehicle. Therefore, appellee could not have been convicted of violating R.C. 2913.02(A)(2) under the facts presented to the trial court. Rather, the record as discussed herein shows appellee knowingly used or operated the borrowed vehicle in a manner that was beyond the consent of the owners. In fact, appellee could not even have raised an affirmative defense in this case because the owners expressly withdrew their limited consent.

Accordingly, for the foregoing reasons, the decision of the court of appeals is reversed and the trial court's judgment is reinstated.

*Judgment reversed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.