# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 77471-9-I |
| | ) | |
| C.B. | ) | DIVISION ONE |
| | ) | |
| | ) | PUBLISHED OPINION |
| | ) | |
| | ) | FILED: June 17, 2019 |

LEACH, J. — C.B. appeals the trial court's order for an involuntary 90-day commitment. She claims that she did not waive her alleged constitutional right to a jury trial. But C.B. does not have a constitutional right to a jury trial in this proceeding. And because C.B. was given notice of her statutory right to demand a jury and did not do so, we affirm.

## FACTS

In July 2017, a King County designated mental health professional detained C.B. for 72 hours of psychiatric evaluation and treatment. Three days later, Harborview Medical Center filed a 14-day involuntary treatment petition. After a probable cause hearing, the trial court ordered her committed for 14 days. Her attorney acknowledged receiving a copy of the court's findings of fact, conclusions of law, and order by signing the original. This document included a statement that C.B.'s defense attorney notified C.B. that she had the right to a full

hearing and/or a jury trial if Harborview sought involuntary treatment beyond this 14-day period.

In August, Harborview asked the court to commit C.B. involuntarily for 90 days. At a trial setting hearing, the trial court scheduled a bench trial on this request. C.B.'s attorney signed the scheduling form and initialed the statement confirming C.B.'s oral waiver of a jury trial.

At trial, C.B.'s defense attorney explained why C.B. could not be transported in person to court. She said she had informed C.B. of her right to be present and that C.B. had waived that right.[1] The court accepted the requested waiver of appearance.

Witnesses testified that C.B.'s mental impairment resulted in her inability and unwillingness to care for herself. The trial court found by clear, cogent, and convincing evidence that C.B. was gravely disabled and less restrictive alternatives to 90 days of involuntary commitment were not in her best interest. It ordered C.B. involuntarily committed for 90 days. C.B. appeals.

---

[1] C.B.'s attorney and the court discussed the possibility of a videoconference or phone call, but C.B. declined. On August 28, 2017, this court concluded that a respondent to a petition for involuntary treatment was not "present" under RCW 71.05.310 in a videoconference. It did not rule on telephonic presence. In re Det. of J.N., 200 Wn. App. 279, 290, 402 P.3d 380 (2017).

## ANALYSIS

An appellate court reviews a claim of a constitutional right to a jury trial de novo.[2] It also reviews the interpretation of a statute or court rule de novo.[3]

### Mootness

As a preliminary issue, C.B. asserts that her case is not moot.[4] We agree.

For certain commitment orders, including the one C.B. challenges, Washington's involuntary treatment act (ITA)[5] provides for collateral consequences in later petitions and hearings.[6] So the challenged involuntary commitment order may have an adverse impact on C.B. in any future effort to involuntarily commit her.[7] Because this case is not moot, we address the merits of her appeal.

### Right to Jury Trial

C.B. claims that the Washington State Constitution guarantees the right to a jury trial in 90-day commitment proceedings. We disagree. [8]

---

[2] In re Det. of S.E., 199 Wn. App. 609, 614, 400 P.3d 1271 (2017), review denied, 189 Wn.2d 1032 (2018).

[3] Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002); State v. McEnroe, 174 Wn.2d 795, 800, 279 P.3d 861 (2012).

[4] The State does not address this issue.

[5] Ch. 71.05 RCW.

[6] In re Det. of M.K., 168 Wn. App. 621, 626, 279 P.3d 897 (2012) (citing RCW 71.05.012, .212, .245).

[7] See M.K., 168 Wn. App. at 625.

[8] The State does not discuss this issue.

The Washington Constitution provides, "The right of trial by jury shall remain inviolate."[9] To determine whether this right exists for a particular case, Washington courts use a two-step analysis.[10] First, the court identifies the scope of the right to a jury trial in 1889.[11] Second, the court decides whether "the type of action at issue is similar to the one that would include the right to a jury trial at that time."[12]

The Code of 1881 was in effect when Washington adopted its constitution in 1899.[13] Section 1632 of this code provided an individual with the right to demand a jury trial in a case to decide whether she could be committed indefinitely to a "'hospital for the insane.'"[14] So, in 1889, the jury trial right attached to a case involving a request for indefinite detention. But no statute provided for a defined period of temporary confinement similar to the provisions of the ITA. So in 1889 the right to a jury trial did not extend to a request to involuntarily commit a person for 90 days.

Our Supreme Court's consideration of other provisions of the ITA shows that a proceeding to decide if a person should be involuntarily committed for 90

[9] WASH. CONST. art. I, § 21.
[10] In re Det. of M.W., 185 Wn.2d 633, 662, 374 P.3d 1123 (2016) (citing Endicott v. Icicle Seafoods, Inc., 167 Wn.2d 873, 884, 224 P.3d 761 (2010)).
[11] M.W., 185 Wn.2d at 662 (citing Endicott, 167 Wn.2d at 884).
[12] M.W., 185 Wn.2d at 662 (citing Endicott, 167 Wn.2d at 884).
[13] Sherwin v. Arveson, 96 Wn.2d 77, 83, 633 P.2d 1335 (1981).
[14] S.E., 199 Wn. App. at 617.

days is not similar to the 1889 commitment proceeding that included a right to a jury trial. In In re Detention of M.W.,[15] our Supreme Court considered whether a provision of the ITA[16] providing the procedure for recommitting individuals found incompetent to stand trial for violent felonies violated the constitutional right to a jury trial. The court held it did not.[17] We find the court's explanation instructive:

> This civil commitment process is distinguishable from indefinite civil commitment schemes that require jury trials on initial commitment because the ITA involves only short periods of commitment and requires the State to file a new petition and carry a high burden of recommitment at the expiration of each period (here, every 180 days).[18]

For purposes of our analysis, the 90-day commitment period in issue cannot be distinguished. So no state constitutional jury right exists for a 90-day commitment under the ITA.

C.B. contends that In re Quesnell[19] recognizes a constitutional right to a jury trial applicable here. It does not. In Quesnell, the Washington Supreme Court held that a guardian ad litem could not waive an individual's right to a jury trial in a commitment proceeding after that individual had asserted it through

---

[15] 185 Wn.2d 633, 641, 374 P.3d 1123 (2016).
[16] Former RCW 71.05.320(3)(c)(ii) (2013).
[17] M.W., 185 Wn.2d at 663.
[18] M.W., 185 Wn.2d at 663.
[19] 83 Wn.2d 224, 240-41, 517 P.2d 568 (1973).

private counsel.[20] In a footnote, the court stated that "[o]ur ruling in this case is limited strictly to the single issue involved."[21]

Recently, this court decided that no constitutional right to a jury trial exists for a 14-day probable cause hearing under the ITA.[22] Here, we extend that holding and conclude that the Washington Constitution does not provide for a right to a jury for proceedings on a petition for a 90-day involuntary commitment.

Whether C.B had a constitutional right or a statutory right to a jury trial, the result would be the same. She must demand it or it is waived.[23] The statutes and cases from the Code of 1881 to the present all have required a party subject to a proceeding for involuntary commitment demand a jury for the right to attach.[24] The Washington Constitution, article I, section 21 allows the legislature to "provide . . . for waiving of the jury in civil cases where the consent of the parties interested is given thereto." In 1973, the legislature adopted the ITA.[25] It requires that a defendant demand a jury for a 90-day proceeding or that right is

---

[20] Quesnell, 83 Wn.2d at 242.

[21] Quesnell, 83 Wn.2d at 242 n.23.

[22] S.E., 199 Wn. App. at 627-28.

[23] S.E., 199 Wn. App. at 616 (quoting CODE OF 1881, ch. 110 § 1632); Quesnell, 83 Wn.2d at 242; In re Ellern, 23 Wn.2d 219, 224, 160 P.2d 639 (1945).

[24] S.E., 199 Wn. App. at 616 (quoting CODE OF 1881, ch. 110 § 1632); Quesnell, 83 Wn.2d at 242; Ellern, 23 Wn.2d at 224.

[25] Ch. 71.05 RCW; S.E., 199 Wn. App. at 625.

waived.[26] So, whether the right is constitutional or statutory, the act provides the method for its assertion: demand a jury or lose the right to have one.

We next consider C.B.'s claim that she had to be notified in open court of her jury trial right before it could be waived. We again disagree.

MPR 3.3 contains the procedure for demanding a jury in an ITA proceeding. C.B.'s claim requires an interpretation of this rule. When an appellate court interprets a court rule, it uses the same tools used for statutory construction.[27] When an appellate court interprets a statute, its goal is to "give effect to the legislature's intent."[28] The court first looks to the rule or statute's plain language, "considering the text of the provision in question," its context, "related provisions, and the statutory scheme as a whole."[29] The court seeks a construction that avoids constitutional problems if possible.[30] Courts construe civil commitment rules and statutes strictly because they involve a deprivation of liberty.[31] But we also "keep in mind the need to satisfy the intent of the statute [or rule] while avoiding absurd results."[32]

---

[26] RCW 71.05.300, .310; see also MPR 3.3(b).
[27] State v. George, 160 Wn.2d 727, 735, 158 P.3d 1169 (2007).
[28] TracFone Wireless, Inc. v. Dep't of Revenue, 170 Wn.2d 273, 281, 242 P.3d 810 (2010).
[29] State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013).
[30] State v. Chester, 133 Wn.2d 15, 21, 940 P.2d 1374 (1997).
[31] In re Det. of Swanson, 115 Wn.2d 21, 27, 795 P.2d 962 (1990).
[32] Swanson, 115 Wn. 2d at 28.

The ITA gives the State the right to request a longer period of temporary commitment if a person involuntarily committed for a short period of time exhibits a mental impairment that renders her gravely disabled.[33] To address this possibility, the ITA requires the trial court provide a person committed for 14 days with this written notice: "if involuntary treatment beyond the fourteen day period . . . is to be sought, such person will have the right to a full hearing or jury trial as required by RCW 71.05.310" when a 14-day petition is granted.[34]

If the State determines additional commitment is necessary, it may then file a 90-day involuntary petition,[35] and the court clerk "shall set a time for the person to come before the court on the next judicial day after the day of filing unless such appearance is waived by the person's attorney."[36] The ITA states that "[a]t the time set for appearance the detained person shall be brought before the court, unless such appearance has been waived and the court shall advise him or her of . . . his or her right to a jury trial."[37] It also provides that "[i]f the person named in the petition requests a jury trial, the trial shall commence within ten judicial days of the first court appearance after the probable cause hearing."[38]

---

[33] See, e.g., RCW 71.05.240(3)(c).
[34] RCW 71.05.240(5).
[35] RCW 71.05.300.
[36] RCW 71.05.300(1).
[37] RCW 71.05.300(2).
[38] RCW 71.05.310.

MPR 3.3 describes more specifically the procedure for demanding a jury in an ITA proceeding. The Washington Supreme Court adopted this rule under the authority granted by the ITA.[39] MPR 3.3(b) provides that the defendant must demand a jury trial "[w]ithin two judicial days after the person detained is advised in open court of his right to a jury trial as provided in RCW 71.05.300." If a defendant follows this procedure, the jury trial must commence within ten judicial days after the preliminary appearance.[40] If the defendant does not timely demand a jury trial, "the matter shall be heard without a jury."[41]

C.B. contends that MPR 3.3(b) requires the defendant be notified in open court of the right to a jury trial. We disagree.

The statutory scheme for involuntary commitment anticipates that the defendant may not be present for the trial setting hearing on a petition for a 90-day commitment. It states that if a petition is filed, the court "shall set a time for the person to come before the court on the next judicial day after the day of filing unless such appearance is waived by the person's attorney."[42] At this hearing, "the court shall advise [the person subject the petition] of . . . her right to a jury

---

[39] RCW 71.05.570 (conferring authority upon the Washington Supreme Court to "adopt such rules at it shall deem necessary with respect to the court procedures and proceedings provided by this chapter").

[40] RCW 71.05.310.

[41] MPR 3.3(b).

[42] RCW 71.05.300(1) (emphasis added).

trial."[43] This is the "open court" proceeding referenced in MPR 3.3(b). If the person waives appearing in court on this date, she also waives the verbal notice that RCW 71.05.300(2) instructs the trial court to give her. C.B.'s claim would eliminate the right to waive an appearance conferred by the statute and force every subject of a petition to appear, regardless of their physical or mental conditions, so the court could advise them of their right to a jury. We reject this unreasonable and unnecessarily burdensome result.

C.B waived her appearance at the trial setting hearing. By waiving this appearance, she waived her right to be orally advised in open court of her right to demand a jury. C.B. did not demand a jury trial. The trial court did not err by conducting a hearing on the petition without a jury.

C.B. next claims that she did not waive her right to a jury trial because the record does not establish that she had notice of her right to a jury trial. But it does. The written order committing her for 14 days stated, "If involuntary treatment beyond the fourteen day period . . . is to be sought, respondent will have the right to a full hearing or jury trial as required by RCW 71.05.310." It also stated that counsel had provided C.B. with a notice of C.B.'s right to a hearing or jury trial and that C.B. orally waived this right in her attorney's presence. C.B.'s defense counsel signed this order indicating C.B. received notice and orally

---

[43] RCW 71.05.300(2).

waived her right to jury trial. Her current counsel's claim requires that we presume her trial counsel misrepresented her own and her client's actions. We decline to do so.

C.B. cites to Quesnell as support for her claim that the State must prove an affirmative waiver directly from C.B. But in Quesnell a guardian ad litem waived the right to a jury trial after the appellant, through private counsel, demanded it.[44] Because of the demand, the right was not implicitly waived. A proceeding without a jury at that point was proper only if the appellant had notice and provided an affirmative waiver.[45] Quesnell provides no guidance where the defendant does not demand a jury trial.

C.B. also contends that her attorney failed to demonstrate specific authorization to waive the right to a jury on C.B.'s behalf. But she provides no authority to support her contention that specific authorization must be shown when a demand must be made for a jury and, in the absence of such a demand, waiver is implicit. Instead, she cites to two cases where a waiver or withdrawal occurred after a demand was made.[46] And she cites to two other cases that involve adoption and deprivation of parental custody, neither of which address an implicit waiver of the right to a jury trial that occurs when a party does not

---

[44] Quesnell, 83 Wn.2d at 242.
[45] Quesnell, 83 Wn.2d at 242-44.
[46] Quesnell, 83 Wn.2d at 238-39; Graves v. P.J. Taggares Co., 94 Wn.2d 298, 305, 616 P.2d 1223 (1980).

demand one.[47] Since she cites no authority on point, we assume that she has found none.[48]

Finally, C.B. claims that she had to knowingly, intelligently, and voluntarily waive the right for the waiver to be valid. In an earlier unpublished case we refused to interpret RCW 71.05.310 and MPR 3.3(b) to require knowing, intelligent, and voluntary waiver of the jury right, and we decline to do so now.[49] The knowing, intelligent, and voluntary standard is the standard for a waiver of a jury trial in criminal cases.[50] But a civil case differs from a criminal prosecution.[51] And the general rule for waiving a jury trial in civil cases under CR 38 is that a party implicitly waives her right if she does not demand it.[52]

C.B. contends that Godfrey v. Hartford Casualty Insurance Co.[53] requires this court to apply a criminal standard to the analysis of jury waiver in civil as well as criminal cases. But, as the State points out, Godfrey is narrowly limited to

---

[47] In re Adoption of Coggins, 13 Wn. App. 736, 739, 537 P.2d 287 (1975); In re Welfare of Houts, 7 Wn. App. 476, 482, 499 P.2d 1276 (1972).

[48] Grant County v. Bohne, 89 Wn.2d 953, 958, 577 P.2d 138 (1978) ("Where no authorities are cited, the court may assume that counsel, after diligent search, has found none.").

[49] In re Det. of J.G., No. 70369-2-I, slip op. at 4-5 (Wash. Ct. App. Aug. 19, 2013) (unpublished), http://www.courts.wa.gov/opinions/pdf/703692.pdf.

[50] State v. Stegall, 124 Wn.2d 719, 724-25, 881 P.2d 979 (1994); State v. Hos, 154 Wn. App. 238, 250, 225 P.3d 389 (2010).

[51] Addington v. Texas, 441 U.S. 418, 428, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979); Hos, 154 Wn. App. at 225.

[52] CR 38(b)-(d); Sackett v. Santilli, 101 Wn. App. 128, 133-34, 5 P.3d 11 (2000), aff'd, 146 Wn.2d 498, 47 P.3d 948 (2002).

[53] 142 Wn.2d 885, 898, 16 P.3d 617 (2001).

contractual waivers of the right to a jury in arbitration clauses. It does not purport to overturn case law and court rules that allow for implicit waiver of the right to jury trial in a civil case without a showing of knowing, intelligent, and voluntary action.[54] In a subsequent case, Adler v. Fred Lind Manor,[55] the court explained, "The crux of our decision in Godfrey was that by knowingly and voluntarily agreeing to arbitration, a party implicitly waives his right to a jury trial by agreeing to an alternate forum, arbitration."

C.B. fails to establish the court erred by conducting the trial on the 90-day involuntary commitment petition without a jury. The Washington Constitution does not confer a right to a jury trial for a hearing on a 90-day commitment proceeding. Under the ITA, C.B. had to demand a jury to receive one. And because she waived her right to appear, she also waived her right to be notified in open court of her right to a jury trial. By failing to demand a jury trial, she implicitly waived her statutory right to one.[56]

---

[54] Godfrey, 142 Wn.2d at 898.

[55] 153 Wn.2d 331, 360, 103 P.3d 773 (2004) (citation omitted).

[56] The State contends that even if criminal standards apply, C.B.'s waiver was valid. Since this is not a criminal case and C.B. did not demand the right to a jury, we need not address this issue. We note that many issues relating to waiver could be avoided with an amendment to MPR 3.3 that requires the filing of a written waiver of the right to a jury trial signed by any detained person who does not personally appear at a trial setting hearing.

## CONCLUSION

We affirm. The Washington Constitution does not confer the right to a jury trial for a 90-day commitment proceeding. C.B.'s attorney provided her notice of her statutory right to a jury trial. By waiving her presence in court at the trial setting hearing, she also waived her right to notice in open court of her statutory right to demand a jury. She failed to demand a jury and so implicitly waived the right. The trial court did not err in conducting the trial on the petition without a jury.

_Leach, J._

WE CONCUR: